6. Mischler v. Acting Commissioner Berryhill May it please the Court, Dana Duncan on behalf of Judith Mischler. Ms. Mischler suffers from an affective disorder. There's also a diagnosis of major depressive disorder, anxiety disorder, spinal disorder, pain disorder with chronic abdominal pain. Two issues are before the Court today. Both are common issues which have been well litigated in this Court. First is the validity of the hypothetical question propounded by the vocational or to the vocational expert by the ALJ. A hypothetical question which did not adequately in Mischler's position encapsulate the ALJ's noted findings at Step 3 that Mischler had moderate limitations in concentration, persistence or pace. So Mr. Duncan, we get an awful lot of these cases as you know. Yes. And I'm curious as to what needs to be said both in the residual functional capacity and in the limitations in concentration, persistence and pace. You know, do you have to say her mind is going to wander or she's going to, I don't know, she'll just stop working for a while? What does this really mean as a practical matter? Because we can't ask the vocational experts to perform the impossible. Correct. Judge, and I have thought in large or many hours about this very question. By the way, there are 39 of these cases decided by the district courts in the month of February alone. Right. It happens all the time. And so clearly some sort of clarity for the administrative law judges and for the VEs would be helpful. And this can be resolved in one particular way. The substantial evidence test directs that substantial evidence is based on how well the ALJ articulates the case or articulates his findings. If the ALJ, and I go back to my days as a history tutor in college, no one cares what you argue or I mean it's how well you do it. You can have the most absurd comment in history or any social science as long as you have good points to justify it, it stands. In this case, what we have is a shorthand that ALJs are taught by Social Security to give the appearance that they are individualizing the mental impairments in the hypothetical question. Sullivan from the Supreme Court indicates that the hypothetical question is to be individualized per climate. And they're not. In fact, I could go through because I prepared a list or presentation I did for the National Organization of Social Security Attorneys where I went through and found 40 different cases that were mine, litigated in the Eastern and Western District of Wisconsin. All involved simple, routine, repetitive, one to two steps, limitations, 10% off pass, limited decision making, limited reasoning, and these are involving bipolar disorder, depression, substance addiction disorder, somatoform disorder, personality disorder, affective disorder, borderline intellectual functioning. No, I see the point. If it's the same everywhere, it's hard to say it's individualized. So what I'm opinion. And one of the things he says, limited, simple, routine, repetitive tasks in a low-stress job. So I guess what some of our cases have indicated is that it might be a simple job, but you might not stick with it anyway. You might go off for a 20-minute break because you are bored or you can't stick with it somehow. You've got some mental disability that prevents staying with a job. The problem in these particular cases, Judge, and I did cite this in my brief a little bit for both the point and for the fun, was the issue of I love Lucy, which is- We all know I love Lucy. Your bonus says that that's a little exaggerated though. But it does give a good example of what the difference is between simple, routine, and repetitive work and stuff that requires attention, concentration, and persistence. Well, that was a pace problem, if I remember this name correctly. Yes, it was. And in this particular case, we have Ms. Mishler, who's diagnosed with both major for both is loss of concentration or mind going blank. So if that's a common situation, you have to account for that somehow. So if it's an easy job, maybe you account for it. I really would love to get some clarity on this because it happens so much. But if you lose your concentration, maybe you need a certain type of supervision or something. I'm just trying to think again, what are you really asking vocational experts to be told? Well, it's partly too that you have a vocational expert who's an expert on vocation or vocational science sitting there. The LJs, if they are not sure of what should or could be done or how a particular limitation would affect, can ask the vocational expert questions to clarify what exactly, if the person has losses of concentration, what impact would that have on jobs? When does concentration or loss of concentration become problematic? And even then, it's important to remember that while the commissioner's brief makes the point that moderate does not mean a complete elimination of that functioning, it's an erosion. And you can add it. I can tell you right now for a fact, if you're limited to sedentary work and you're precluded from having more than occasional contact with the public and co-workers, there are almost no jobs you can perform, even though that's a very moderate limitation on human contact because most jobs that are sedentary require some element of customer service. So that's what we're talking about as far as how exactly you have to address it. And that may be the best way of doing it. Again, though, the ultimate conclusion is that the ALJs have to actually explain how they came up with it. There's a reason why this court has used the language build a bridge between the findings and the evidence. And that's what we're talking about. There's just nothing here to explain how they go from point A to point B. The pressure on the judge to produce results is enormous. So they rely on skipping things over or using coined words. Okay. And I understand that... In paragraph four, you would be satisfied if that paragraph had also said, and limitations in ability to maintain concentration, persistence, and pace. If somehow it was indicated that the ALJ is asking the vocational expert to factor that set of limitations in. Or something that... I don't see a synonym. I mean, synonym, of course, is fine, but I don't see a synonym here. And one of the series of questions I ask in hearings, can you watch a half-hour television program and follow along? Do you have problems while you're driving forgetting where you're going and not knowing where you are? Do you get distracted and leave things like stove burners on? Things like those are relevant and would have a significant impact. While listening to the argument, you suddenly think of something else. Go ahead. Judge Bower's never done that. Mr. Duncan, I do have a question for you. Yes, Judge. The judicial court noted that she previously had been found disabled, but that her benefits were cut off when the government learned that she and her husband had a business that put her over the resource limit. Is there any evidence in the record regarding any change in her condition between the time of the initial finding of disability and the time she applied the second time? I mean, I assume she must have been working at that business at the time her benefits were terminated. Had her condition improved? It doesn't appear to be. In fact, there was a period of time in 2009, 10, and 11 where she was getting her mental health treatment through her private or her general medical treater who was also treating her back problems. She then subsequently had those medications, I believe, increased and then started seeing Dr. Denison yet again. And at that point, too, she then separated from her husband due to allegations of an abusive relationship, which would have also changed her circumstance. And I know I'm over, but I just wanted to address Judge Bower's comment about the ALJs. And my statement on that is, yes, ALJs are overworked. I know almost all of the ALJs. But because they're overworked does not mean that they necessarily should get a pass on writing quality decisions. I couldn't agree with you more. And that's my concern is it's not... There are judges and courts of appeals in the United States who have the same problem. Correct. And Social Security could resolve it by hiring more judges, which they do periodically. But right now there's a hiring freeze. Yep. All right. I'll resign the rest of my time. Thank you. You ran out, but I'll probably give you some more. Ms. O'Callaghan. And there is a way to make this go down a little bit. Yes, there's a button on this side. Yeah, there you go. And hit it again where you want it. Oh, thank you. If you want it up some, you can hit it too. It's just a switch. I feel like sometimes I'm a little short, and sometimes it gets in my way of talking. I use my hands, or I tend to. May it please the court, Megan O'Callaghan on behalf of... I tell you, you could help me if you would move closer to the microphone. You bet. I can do that. That a way. And you keep your voice up. I can do that too. Oh, man, go ahead. Megan O'Callaghan on behalf of the Acting Commissioner of Social Security. Appellant talked a bit about questions he asked in other cases, about things that happen in other cases, but every disability application is decided on and depends on the record in that specific case. That's absolutely true, Ms. O'Callaghan, but this administrative law judge does find the moderate limitations in concentration, persistence, and pace. And then if you look at the residual functional capacity, I see nothing that picks up those kinds of limitations. And you can't ask the vocational expert to come up with jobs when you haven't fully informed the vocational expert of the limitations, as you rightly say, that individual has. In your honor, in this case, the ALJ did inform the vocational expert of all of the limitations found credible and reasonably rejected more serious limitations. And in saying that... Where do you see that, though? I'm looking at the ALJ's own opinion. After careful consideration of the entire record, I find that the claimant has the residual functional capacity... And the ALJ has accepted the moderate limitations in concentration, persistence, and pace, but seems to think, after we get past the stooping and crouching and all of that stuff that everybody always puts in, seems to think simple, routine, repetitive tasks in a low-stress job and occasional interaction with the public and co-workers, no piecework or assembly line, off-task 10%, seems to think that captures it. And I don't see it. I don't see where concentration, for example, is reflected in this. It can be as routine as can be, but if you... Have you ever tried working with a two-year-old? I mean, they have no concentration abilities either, and it can be a very simple task, but they wander off and do something else. Exactly. And I'm glad you brought up that point. So concentration, persistence, and pace. Those, as we can all agree, depend on what you're doing and in what environment you're doing it. No, I don't know that we all agree with that or not. If you have limitations in your ability to concentrate, then those limitations are logically a different impairment than whether it's a complex job, whether you regard it as a stressful job, whether it's something that other people are standing around you or not. It's a different quality. Correct. And the ALJ took into account all of those, but I'd like to address... Where? Where? Around tandem tasks, around others, low stress... I know, and I'm saying those are not concentration. The ALJ did take other problems into account, but not concentration. Your Honor posed a hypothetical in appellant's argument about a person who is tasked with doing simple things, but then loses their concentration. They can't keep going. You've posed it another way in another case where you said, what about a person who's tasked with taking a nail and putting it in a bag? And their difficulties with concentration cause such problems that they can't do it for more than five minutes. They get distracted, they get off tasks. As you said during appellant's argument, after 20 minutes, or they need to take a 20 minute break, they have to stop. What we need to understand is such an individual has marked limitations in concentration, persistence, or pace, not moderate. And we know that because of the regulations. So if an individual cannot complete simple tasks without undue interruptions and distractions, they have marked limitations. If an individual cannot complete simple tasks without extra supervision or assistance, they have marked limitations. But moderate limitations are limitations. Certainly, certainly. But to suggest that they require... And they're more than mild. And so I don't see where even a moderate level of problem with concentrating is reflected in this The state agency psychologist, and let me begin with, before I get into that answer, the word concentration does not appear. We agree. It's not in there. But the question... Nor is a synonym or a set of restrictions that would address... I mean, I'm not going to worry about whether it says concentration, persistence, and pace. Although it does seem that that might be the easiest way to get around this repetitive problem we have in these cases. Right. But in telling a vocational expert that someone has moderate limitations in concentration, persistence, or pace, that doesn't really help the vocational expert. That is not in... How do you know? It's not in vocational terms. It's not... Pace? I mean... Sure. But pace... Can you work quickly? Are you efficient? Do you not work quickly? And here's what we know, that this person can't do fast-paced work or assembly line work. We have excluded the upper ends of pace. Another thing... Where do you do that? No piece work or assembly line work. It doesn't say anything about how fast it is. That's correct. It doesn't say anything about how fast it is. So I don't see where pace is reflected in that. Being allowed to be off task up to 10% of the workday might begin to address some of these things. Because if your mind wanders, then presumably you're off task. So you could be off task one hour out of 10, assuming you had a 10-hour workday, counterfactually. Certainly. But it's also important to understand that these limitations are moderate and not marked. And so the regulation I was talking about... But I'm worried that you're not giving any room for the moderate limitation. You're putting them all at the non-existent or mild level. And certainly that's not what the agency is intending to do. The agency is asking experts to look at the record and say, this person has moderate limitations. What can they still do? If they had asked this VE that precise question that you were articulating, I'm not sure we'd be here. That's not a question for the vocational expert, with all due respect. That's not something the vocational expert should be asked to do. The ALJ has to incorporate that concept in the residual functional capacity. That's what we're talking about. And then, of course, the hypothetical question just repeats the RFC, basically. Can a person with the following RFC perform any work in the national economy? Certainly. It would be inappropriate to have limitations in addition to what the ALJ found in the residual functional capacity. But what I'm trying to communicate, perhaps inartfully, is that the agency has asked an expert to explain what functional limitations a person has with moderate limitations in concentration, persistence, or pace. In this case, with these records. And that individual, Dr. Rosenfeld, said this person can sustain work so long as the work is one to three steps, so long as it's done with occasional interaction with others, and so long as it's done with only occasional workplace changes. So that takes us both to Dr. Rosenfeld's opinion and also to the treatment that the ALJ gave to Dr. Dennison, if I remember the name. Yes. Even if she had only begun to see Dr. Dennison during phase two, so to speak, there's more than a year of treatment. I don't quite understand how she disregards everything that Dr. Dennison has said. You know, I'd like to pile on. Yes. Because the ALJ discounted the extent of the relationship with Dr. Dennison. The record supports a 12-year relationship with monthly visits for more than a year before completing the assessment and discounted Dr. Dennison's opinion because on a few occasions she was feeling better. I absolutely do not know how in this case that selective use of the record can be squared with our opinion that absolutely disallow cherry picking. The ALJ made factual errors about Dr. Dennison. The ALJ incorrectly found that the ALJ made a factual error in attributing the GAF score to Dr. Dennison. The therapist, Ms. Cooney, seems to have assessed Ms. Lutter's GAF after a single visit. You know, what way do we give that factual error? Because it caused the ALJ to mistakenly assume that Dr. Dennison had overestimated her impairments. There's a lot here. If I may have, I see that my time has expired. If I, there was a lot in that and if I may have a minute to, I think, get to the heart of it. And it's not that the ALJ ignored the record. It's that the ALJ found direct contradictions within the record. But the ALJ makes mistakes about the record, as Judge Grosvenor's pointing out, so what confidence can we have? The ALJ made one mistake, and that's with who issued the GAF score. No, no, the inpatient treatment. Right, the inpatient treatment. She was in the hospital. That's inversion. She presented to the emergency room. I mean, there are quite a few errors here. And the ALJ didn't misstate the treatment. He acknowledged a 12-year treatment history, but said she had only presented recently. And the ALJ used Dr. Dennison's words, that she had not been seen for quite some time. But what I'd like to do is address points where the ALJ found explicit contradictions in the record. Notably, Dr. Dennison opined that Ms. Mishler would have marked limitations in her ability to respond in an emotionally stable manner and to respond predictably in social settings. The ALJ contrasted Ms. Mishler's presentation to Dr. Dennison with her presentation to other treatment providers. This isn't a case where, like it has been in others, where the other treatment providers were silent about how she presented. Rather, they, as the ALJ noted, were contrary.  She was wonderful. She was pleasant. She had a normal affect. These are, as the ALJ said, direct contradictions. In addition, the ALJ noted that Dr. Dennison had opined that she had marked limitations in concentration and persistence. Again, this isn't a case where the treatment records are silent. Rather, the mental status examinations show the opposite. Okay, I think we need to wrap up at this point. Yes. If there are no further questions, the Commissioner asks that the District Courts and the ALJ's decision be affirmed. All right. Thank you very much. And one minute for you, Mr. Duncan. We've gone over quite a bit in this case. All right. Very briefly, the problem with Dr. Rosenfeld's opinion is, is as the Court ruled in Varga and then an unpublished decision, Capman, the ALJ can rely on a narrative to the extent that it corresponds accurately with the Section 1 of the Mental Residual Functional Capacity. Yeah. And in this particular case, she marked moderate limitations in the ability to complete a normal workday or workweek and to operate within a normal work pace. And yet there's nothing in there that indicates that. She also found, and this always floors me, moderate limitations in detailed instructions and then turned around and found moderate limitations in simple routine instructions and that it prevented detailed but allowed simple. So in other words, moderate is preclusive in one situation and inclusive in the other, which makes absolutely no sense to me. If you're going to preclude detailed instructions, why would that not be a marked limitation? But that just shows the problems with the narrative in this case. And then lastly, I would note that the fact that there's a moderate limitation, the regulations in the case law clearly indicate that even non-severe impairments must be addressed. Okay. All right. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.